WILLIAM T. GILBERT, as Receiver of COMMERCIAL ALLIANCE
    LIFE INSURANCE COMPANY, Respondent, v. EDWARD L. FINCH
    et al., Appellants.

1. CORPORATIONS — LIABILITY OF DIRECTORS FOR WASTE OF FUNDS —
JOINT TORT FEASORS. The payment of the funds of an insurance com-
pany by its directors to the incorporators of a foreign insurance corpo-
ration which was not a stock corporation, and who had no interest
therein that could be the subject of a sale, and who divided the pro-
ceeds among themselves in consideration of the assignment by them of
their interest in the corporation, their resignation as incorporators and the
substitution of such directors or their representatives in place of the incor-
porators, is a misappropriation of the moneys of the company, operating
to waste its funds, and constitutes such directors wrongdoers, and among
themselves joint tort feasors, and they are liable for the amount so paid
out; the incorporators, having no property rights to transfer, or if they
had, having converted the money to their own use, are also wrongdoers,
and among themselves joint tort feasors.

· 2. EQUITY — WRONGDOERS NOT ENTITLED TO COMPEL CONTRIBUTION
OR TO ENFORCE SUBROGATION. An instrument purporting to be a release
of the incorporators by a receiver of the insurance company, who had
brought an action against them to recover the payment, executed upon a
compromise, by which he obtained a portion of his claim, but providing
that " the execution of this instrument shall not affect any cause of action
of the receiver against any person not named therein," does not relieve
the directors of the company from liability when sued by him to recover
the balance, upon the ground that if required to return the money paid to
the incorporators they would become in equity entitled to subrogation
to the rights of the plaintiff and entitled to recover it, and that the release
would operate to deprive them of this right, since being wrongdoers
equity would not compel contribution or enforce subrogation.

3. INSTRUMENT IN EFFECT A COVENANT NOT TO SUE DOES NOT
RELEASE JOINT TORT FEASORS. Nor will the defendants be relieved from
liability upon the ground that the so-called release was a settlement of the
entire claim, and that its effect was to discharge them, upon the theory
that all the defendants and the incorporators were joint tort feasors, since,
assuming them to be such, the instrument containing an express reserva-
tion of the right to sue any person not named therein, is in effect a cove-
nant not to sue the incorporators, and a covenant not to sue does not
release joint tort feasors.

4. DIRECTORS NOT RELIEVED FROM LIABILITY BY RELEASE GRANTED
BY THEMSELVES TO A CO-DIRECTOR. The fact that prior to the appoint-
ment of the receiver mutual releases were exchanged between the insur-

ance company and one of the defendants, upon the settlement of an action brought by him against the company to recover a large amount claimed to be due him, does not relieve them from liability, since even if the release by the company were authorized by its board of directors they could not waste its funds and then relieve themselves from liability by a release granted by themselves to a co-director.

*Gilbert* v. *Finch,* 72 App. Div. 38, affirmed.

(Argued January 28, 1903; decided February 10, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 20, 1902, reversing a judgment in favor of defendants entered upon a verdict directed by the court and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Michael H. Cardozo* and *George Wilcox* for appellants. The defendants having acted in good faith, with the utmost care, without personal advantage, having no object except to increase the legitimate business of their company, are not liable in this action. (*Symmes* v. *U. T. Co.,* 60 Fed. Rep. 830, 853 ; Morawetz on Corp. § 553 ; *Leslie* v. *Lorillard,* 110 N. Y. 552 ; Cook on Stockholders, § 648 ; Thomp. on Officers, 233, 241 ; 3 Thomp. on Corp. §§ 4106, 4109 ; 2 Cook on Corp. [4th ed.] §§ 623, 702, 703 ; *Hun* v. *Cary,* 82 N. Y. 65 ; *Holmes* v. *Willard,* 125 N. Y. 75.) There being no evidence of any damage or loss to the defendants' company by reason of the transaction in question, there can be no recovery in this action. (*Van Dyck* v. *McQuade,* 86 N. Y. 38 ; *Holmes* v. *Willard,* 125 N. Y. 75 ; *O'Brien* v. *Fitzgerald,* 143 N. Y. 377 ; *Knapp* v. *Roche,* 94 N. Y. 329 ; *Dykman* v. *Keeney,* 154 N. Y. 483.) The transaction in question was not illegal on the part of the Commercial Alliance Insurance Company. (*S. H. B. Co.* v. *Eickemeyer Co.,* 90 N. Y. 607 ; *Rogers* v. *Pell,* 154 N. Y. 518 ; *Koehler* v. *Reinheimer,* 26 App. Div. 1 ; *Steinway* v. *Steinway,* 17 Misc. Rep. 47 ; *C. T. Co.* v. *W. Mfg. Co.,* 58 App. Div. 271 ; *Vought* v. *E. B. & L. Assn.,* 172 N. Y. 508.)

The transaction in question was not illegal on the part of the Maine Company. (*Weymouth.* v. *P. L. D. Co.*, 71 Me. 29; *Woodruff* v. *E. Ry. Co.*, 93 N. Y. 618; *Holmes* v. *Willard*, 125 N. Y. 75; *Holmes* v. *Holmes*, 127 N. Y. 252; *Little* v. *Garabrant*, 90 Hun, 404; 153 N. Y. 661; *Denike* v. *N. Y. & R. L., etc., Co.*, 80 N. Y. 599; *Castner* v. *T. C. Co.*, 91 Me. 524; *Matter of I. L. A. Soc.*, L. R. [9 Eq. Cas.] 316; *Matter of M., etc., Soc.*, L. R. [6 Ch. App.] 374; *Matter of A. L. A. Co.*, L. R. [6 Ch. App.] 381.) The Commercial Alliance Life Insurance Company and the plaintiff, its receiver, have, with full knowledge of all the facts, ratified and confirmed the transaction by retaining and using the proceeds thereof, and are now estopped from maintaining this action. (*S. H. B. Co.* v. *Eickemeyer Co.*, 90 N. Y. 607; *Woodruff* v. *E. Ry. Co.*, 93 N. Y. 609; *R. L. R. Co.* v. *Roach*, 97 N. Y. 378; *Veeder* v. *Mudgett*, 95 N. Y. 295; *Rogers* v. *Pell*, 154 N. Y. 518; *Moss* v. *Cohen*, 158 N. Y. 240.) If any liability ever existed, as claimed in the complaint, the defendants were released and discharged therefrom by reason of the settlement of the action brought by the plaintiff against the members of the Maine and New Brunswick Insurance Company and the release given to them. (*Knapp* v. *Roche*, 94 N. Y. 329; *Wood* v. *Pangburn*, 75 N. Y. 498; *Mitchell* v. *Allen*, 25 Hun, 543; *De Long* v. *Curtis*, 35 Hun, 94; *Breslin* v. *Peck*, 38 Hun, 623; *Brogan* v. *Hanan*, 55 App. Div. 92; *Chapman* v. *Dolmer*, 77 N. Y. 51; *Simmons* v. *Everson*, 124 N. Y. 319; *Colgrove* v. *N. Y. & N. H. R. R. Co.*, 20 N. Y. 492; *Barrett* v. *T. A. R. R. Co.*, 45 N. Y. 628.) The general release executed and delivered to the defendant Miller for a valuable consideration is a complete defense to this action not only as to him, but as to all the defendants. (*Kirchner* v. *N. H. S. M. Co.*, 135 N. Y. 182; *Slayton* v. *Hemken*, 91 Hun, 582; *Walbourn* v. *Hingston*, 86 Hun, 63; *Oakes* v. *C. W. Co.*, 143 N. Y. 430; *Hastings* v. *B. L. Ins. Co.*, 138 N. Y. 479; *Powers* v. *S. H. & P. Co.*, 23 App. Div. 380; *Patterson* v. *Robinson*, 116 N. Y. 200.)

*Henry D. Hotchkiss* for respondent. The transaction was illegal *per se*, both as involving moral turpitude and as a violation of statute. It was in every sense void as *ultra vires* both corporations. (*McClure* v. *Wilson*, 70 App. Div. 152; *Huntington* v. *Nat. S. Bank*, 96 U. S. 388; *McClure* v. *Law*, 161 N. Y. 78; *Pierson* v. *Cronk*, 26 Abb. [N. C.] 25; 27 N. Y. S. R. 122; *Mason* v. *Henry*, 83 Hun, 546; 152 N. Y. 529; *Pierson* v. *McCurdy*, 33 Hun, 520.) Neither good faith nor due care on the part of defendants could defeat a recovery. (*People* v. *Ballard*, 134 N. Y. 269; *Holmes, Booth & Haydens* v. *Willard*, 125 N. Y. 75; *Laverty* v. *Snethen*, 68 N. Y. 522; *Met. El. Ry. Co.* v. *Man. Ry. Co.*, 14 Abb. [N. C.] 211; *Pickering* v. *Stephenson*, L. R. [14 Eq.] 322.) The transaction could not be and never was ratified as against this plaintiff. (*S. W. Bank* v. *Smith*, 51 App. Div. 259; Morawetz on Priv. Corp. [2d ed.] § 620; *Mason* v. *Henry*, 152 N. Y. 529; *Halpin* v. *M. B. Co.*, 20 App. Div. 583; *Wilson* v. *Æolian Co.*, 64 App. Div. 337; *Little* v. *Garabrant*, 90 Hun, 404; *People* v. *Ballard*, 134 N. Y. 269; *B. T. Co.* v. *Dessau Co.*, 45 App. Div. 475; *H. & N. H. R. R. Co.* v. *Croswell*, 5 Hill, 383; *Foss* v. *Harbottle*, 2 Hare, 461; *Livingston* v. *Lynch*, 4 Johns. Ch. 573; *C. C. Co.* v. *Sherman*, 30 Barb. 553; *Hazard* v. *Durant*, 11 R. 1. 195.) The release to the Maine directors was not a bar to the present action. (*Mason* v. *Henry*, 152 N. Y. 529; *Mills* v. *Mills*, 115 N. Y. 80; *McClure* v. *Wilson*, 13 App. Div. 274; *Pierson* v. *McCurdy*, 33 Hun, 520; *Comcl. Bank* v. *Taylor*, 64 Hun, 499; *Whittemore* v. *J. L. & S. O. Co.*, 124 N. Y. 565; *Knapp* v. *Roche*, 94 N. Y. 329.)

Haight, J. This action was brought by the plaintiff, as receiver of the Commercial Alliance Insurance Company, against the defendants, as directors of that company, to recover the sum of ten thousand dollars and interest.

The Commercial Alliance Insurance Company was incorporated under the laws of this state and continued in business until October, 1894, when the plaintiff was appointed receiver

in an action brought for that purpose by the attorney-general of the state. The evidence taken upon the trial tends to show that prior to the bringing of the action by the attorney-general the defendants, and other persons beyond the jurisdiction of the court, were acting as directors of the company, and that they entered into negotiations with the ten surviving incorporators of the Maine and New Brunswick Insurance Company, a corporation organized under the laws of the state of Maine, for the purchase and control of that company; that such negotiations were finally consummated on the third day of May, 1893, by the president of the Commercial Alliance Company who, acting in pursuance of the direction of the defendants and their associates, took from the funds of the company thirty-five thousand dollars and paid the same to the ten surviving incorporators of the Maine and New Brunswick Company, giving to each the sum of three thousand five hundred dollars, and taking from them a paper in which they purported to transfer and assign " all their right, title and interest as corporators, associates or otherwise in said Maine and New Brunswick Insurance Company." Simultaneously with the execution and delivery of this paper and in pursuance of that agreement, all of the officers and directors of the Maine Company resigned their places and the same were filled by the defendants or persons acting for or on their behalf. Shortly thereafter, and on the 22d day of July, 1893, the Maine and New Brunswick Company was judicially declared by the Supreme Judicial Court of Maine to be insolvent and a receiver was appointed to wind up its affairs. After the plaintiff was appointed receiver of the Commercial Alliance Company he brought an action against the ten surviving incorporators of the Maine and New Brunswick Company in the United States Circuit Court for the district of Maine to recover back the thirty-five thousand dollars which had been paid to them under the direction of the defendants. Subsequently, this action was compromised under the direction of the court, the plaintiff receiving from such surviving incorporators the sum of twenty-five thousand dollars, and he

thereupon executed and delivered to them an instrument in which he released and discharged all of the defendants in that action " from all claims or demands arising from said suit or the subject-matter thereof, and also from all claims, demands, actions and causes of action whatsoever in favor of said Commercial Alliance Insurance Company or of myself as receiver of said Company to date. The execution of this instrument shall not affect any cause of action of the receiver against any person not named herein." It also appeared upon the trial that the defendant Miller had brought an action against the Commercial Alliance Company prior to the appointment of the plaintiff as receiver, in which he claimed that a large sum of money was due and owing to him from the company. This action was settled upon the payment to him of the sum of eight thousand dollars, and thereupon mutual releases were exchanged between him and the company upon the consideration expressed therein of one dollar.

We fully concur in the conclusions reached by the Appellate Division, to the effect that the transaction by which thirty-five thousand dollars were taken from the treasury of the Commercial Alliance Company and paid over to the incorporators of the Maine and New Brunswick Company was *ultra vires* and constituted a waste of the funds of the Commercial Company, and that the defendants, who authorized such appropriation of the moneys, became liable to respond to the plaintiff in damages. We also are of opinion that the Appellate Division properly disposed of the claim of the defendant Miller under his release.

There is but one question upon which we deem further discussion necessary. That arises out of the release given by the plaintiff to the Maine incorporators upon the settlement of the action against them for twenty-five thousand dollars. It is contended by the defendants in the first place that, if they are required to return to the plaintiff the thirty-five thousand dollars which they paid or caused to be paid to the Maine incorporators, they would become in equity entitled to subrogation to the rights of the plaintiff and entitled to recover the

money which they had paid to the Maine incorporators and that the release would operate to deprive them of this right. In the second place, they contend that the release was a settlement of the entire claim and that its effect was to discharge them upon the theory that they were joint tort feasors.

It is not our purpose to question the character or the motive of the defendants in carrying out the transaction. We may readily concede that they thought they were acting for the best interests of the company which they represented. They, doubtless, thought that by getting control of the Maine Company and getting themselves installed as officers they could get the policyholders in that company to transfer their insurance into the Commercial Alliance Company; but good motives and good intentions do not render the transaction valid or relieve them from liability for the wrong which they have committed. The Maine incorporation was not a stock company. Its officers had no stock in the company which they could sell or transfer, and consequently there was nothing that the Commercial Alliance Company could purchase. The thing accomplished by the transaction was the resignation of the officers of the Maine Company and the substitution of the defendants or their representatives. It was, therefore, a misappropriation of the moneys of the Commercial Alliance Company by the defendants and their associates which operated to waste the funds of the company and they thereby became wrongdoers, and among themselves joint tort feasors. We are also of the opinion that the officers of the Maine Company also committed a wrong. If they, as officers of the Maine Company, could transfer any of the property of that company to the Commercial Alliance Company they had no right, as such officers, to divide up the thirty-five thousand dollars among themselves and put it into their own pockets. If they had no property rights which they could transfer to the Commercial Alliance Company then they had no right to take the money of that company and convert it to their own use, so that, as among themselves, they were joint tort feasors. As to whether they were joint

tort feasors with the defendants we do not deem it necessary to now determine, for it is our purpose to consider the question in both aspects.

If the defendants had paid the Maine incorporators thirty-five thousand dollars of their own money to resign their position in that company and have the defendants substituted in their places, we are aware of no equitable or legal principle upon which they could recover the money. They got what they purchased. They understood fully what the Maine officers had to transfer. In using the money of the Commercial Alliance Company they committed, as we have seen, a wrong upon that company, and our attention has been called to no case in which equity has enforced the right of subrogation in such a case. Indeed, we had supposed the policy of the law to be to leave wrongdoers without aid in equity from the burdens of the position in which they have placed themselves. The rule is well settled that, as among themselves, equity would not compel contribution or enforce subrogation. (*Peck* v. *Ellis*, 2 Johns. Ch. 131; *Miller* v. *Fenton*, 11 Paige 18; *Thorp* v. *Amos*, 1 Sandf. Ch. 26, 34; *Pierson* v. *Thompson*, 1 Edw. Ch. 212, 218; *Wehle* v. *Haviland*, 42 How. Pr. 399, 410; *North* v. *Sergeant*, 33 Barb. 350, 354; *Weidman* v. *Sibley*, 16 App. Div. 616, 619.) We, consequently, conclude that the principles of subrogation do not apply to the defendants in this case.

In considering the effect of the release we shall assume that the defendants were joint tort feasors with the Maine incorporators, and that the release, under seal, of a claim given to one joint tort feasor operates as a release of all. (*Barrett* v. *Third Ave. R. R. Co.*, 45 N. Y. 628, 635, and cases there cited.) This rule is founded upon the theory that a party is entitled to but one satisfaction for the injury sustained by him. The claim of the plaintiff, as we have seen, was for thirty-five thousand dollars; the settlement was for twenty-five thousand dollars, leaving ten thousand dollars of the original claim unpaid and unsatisfied. The instrument given to the Maine incorporators upon the settlement of the plain-

tiff's suit against them released and discharged them from all further claims or demands, so far as the plaintiff was concerned, but it was expressly provided in the instrument that it should not affect any cause of action on behalf of the receiver against any other person. The purpose of this reservation is very evident. The receiver, doubtless, intended to pursue the defendants for the balance of the claim. The instrument, therefore, does not purport, neither was it intended, to be a full and complete settlement of the plaintiff's entire claim. Reservations of this character in releases are not uncommon, and their effect has been the subject of frequent adjudication by the courts. It is quite true that the courts of our sister states have reached different conclusions upon the question, and that a sharp conflict exists in the courts of our own state, as, for instance, *Matthews* v. *Chicopee Mfg. Co.* (3 Robt. 712); *Commercial Nat. Bank* v. *Taylor* (64 Hun, 499), on one side, and *Mitchell* v. *Allen* (25 Hun, 543); *Delong* v. *Curtis* (35 Hun, 94), and *Brogan* v. *Hanan* (55 App. Div. 92), upon the other side.

In England the modern authorities appear to be quite uniform upon the question. They are to the effect that, as between joint debtors and joint tort feasors, a release given to one releases all; but if the instrument contains a reservation of a right to sue the other joint debtor or tort feasors, it is not a release, but in effect is a covenant not to sue the person released, and a covenant not to sue does not release a joint debtor or a joint tort feasor.

In the case of *Duck* v. *Mayeu* (L. R. [2 Q. B. 1892] 511) the question was as to whether the plaintiff had released a joint tort feasor. He had accepted from one a sum of money, but without prejudice to his claim against the other. Smith, L. J., in delivering the opinion of the court, said with reference thereto: "In determining whether the document be a release or a covenant not to sue, the intention of the parties was to be carried out, and, if it were clear that the right against a joint debtor was intended to be preserved, inasmuch as such right would not be preserved if the document were

held to be a release, the proper construction, where this was sought to be done, was that it was a covenant not to sue, and not a release. In the case of *Bateson* v. *Gosling*, at Nisi Prius, the same canon of construction was applied, and it was held that, the release being, as it was, limited by a proviso reserving rights against the surety, it must be taken that it was a covenant not to sue, and not a release; and this ruling was unanimously upheld by the Court of Common Pleas, as reported in Law Rep. 7 C. P. p. 9."

In *Price* v. *Barker* (4 Ellis & Bl. 760 [E. C. L. R. vol. 82]) Coleridge, J., says: "With regard to the first question, two modes of construction are for consideration. One, that, according to the earlier authorities, the primary intention of releasing the debt is to be carried out, and the subsequent provision for reserving remedies against co-obligors and co-contractors should be rejected as inconsistent with the intention to release and destroy the debt evinced by the general words of the release, and as something which the law will not allow, as being repugnant to such release and extinguishment of the debt. The other, that, according to the modern authorities, we are to mould and limit the general words of the release by construing it to be a covenant not to sue, and thereby allow the parties to carry out the whole of their intentions by preserving the rights against parties jointly liable. We quite agree with the doctrine laid down by Lord Denman in *Nicholson* v. *Revill* (4 A. & E. 675 [E. C. L. R. vol. 31], as explained by Baron Parke in *Kearsley* v. *Cole*, 16 M. & W. 136) that, if the deed is taken to operate as a release, the right against a party jointly liable cannot be preserved; and we think that we are bound by modern authorities (see *Solly* v. *Forbes*, 2 Br. & B. 38 [E. C. L. R. vol. 6], *Thompson* v. *Lack*, 3 Com. B. 540 [E. C. L. R. vol. 54], and *Payler* v. *Homersham*, 4 M. & S. 423 [E. C. L. R. vol. 30]) to carry out the whole intention of the parties as far as possible, by holding the present to be a covenant not to sue, and not a release." (See, also, *Currey* v. *Armitage*, 6 Weekly Repr. [Eng.] 516.)

In the case of *McCrillis* v. *Hawes* (38 Me. 566) one Lewis

and the defendant were charged as joint trespassers upon the plaintiff's premises. They had taken one hundred sticks of pine timber. The plaintiff settled with Lewis for one-half of the property taken and brought action against the defendant for the other half. It was held that the action could be maintained and that the settlement was not a release as to the whole claim.

In the case of *Ellis* v. *Esson* (50 Wis. 138) it was held that the instrument given to one of several joint wrongdoers is not a technical release if it appears from the paper that it was not the intention of the injured person to release his cause of action against all the wrongdoers and that the sum received was not in fact a full compensation for his injury nor intended to be such by the parties to the agreement.

In *Sloan* v. *Herrick* (49 Vt. 327) it was held that the release of one joint tort feasor on payment of part satisfaction, when it is expressed in the release that the sum paid is received only in part satisfaction, will not operate to bar the injured party from pursuing the other joint tort feasor for so much of the tort as remains unsatisfied.

We have thus called attention to the English authorities and those of some of our sister states. We have also referred to some of the conflicting cases in our own courts. The question appears to have first received attention here in *Kirby* v. *Taylor* (6 Johns. Ch. 250, 253) in which it was held that a release is to be construed according to the clear intention of the parties, and where it contains a reservation, the other obligee was not discharged.

In the case of *Irvine* v. *Millbank* (56 N. Y. 635, more fully reported in 15 Abb. Pr. [N. S.] 378) the release was, by its terms, to be without prejudice to the rights of the plaintiff as against the other defendants. FOLGER, J., in delivering the opinion of the court, said that this instrument was not a technical release, which it must be to operate as a discharge of a joint tort feasor.

And finally, in the case of *Whittemore* v. *Judd Linseed & Sperm Oil Co.* (124 N. Y. 565) the question was examined

by BROWN, J., and the conclusion reached that where a release of one of two joint debtors contains an express provision that it shall not affect or impair the claim of the creditor against the other debtor, the latter is not discharged.

It thus appears that the decisions of this court are in accord with the English rule and in harmony with our statute in reference to joint debtors. (Code Civ. Pro. §§ 1942, 1944.) They give force and effect to the intention of the parties to the instrument, which, we think, is more just and the wiser and safer rule. Where the release contains no reservation it operates to discharge all the joint tort feasors; but where the instrument expressly reserves the right to pursue the others it is not technically a release but a covenant not to sue, and they are not discharged. It follows that the release, so called, did not operate to discharge the defendants.

The order of the Appellate Division should be affirmed and judgment absolute ordered in favor of the plaintiff upon the stipulation, with costs.

PARKER, Ch. J., GRAY, BARTLETT, CULLEN and WERNER, JJ., concur; O'BRIEN, J., absent.

Order affirmed.