In the city of North Tonawanda there is a highway known as Wheatfield street, which runs substantially east and west, and crosses at grade the tracks of the New York Central and Hudson River Railroad Company, which run practically north and south. The Lehigh Valley railroad uses these tracks in its traffic between Buffalo and Niagara Falls. On the 2d day of October, 1905, the plaintiff was driving across these tracks on Wheatfield street, and collided with a south-bound Lehigh Valley train. The crossing was equipped with gates operated by compressed air from a tower maintained by the New York Central Railroad *Page 276 
Company, which was in charge of a gateman employed by that company. The plaintiff brought this action to recover for the injuries sustained in that collision, and both of the corporations above named were made parties defendant upon the theory that the one had been negligent in the operation of its gates and the supervision of its crossing, while the other had been negligent in the operation of its train. For the purposes of this appeal we may assume that the alleged negligence of the defendants and the plaintiff's alleged freedom from contributory negligence presented questions of fact for the jury. The plaintiff recovered a substantial verdict against both of the defendants, and the judgment entered upon it was affirmed at the Appellate Division by a divided court. Both of the defendants have appealed to this court upon two exceptions taken by them to rulings of the trial court. We shall first consider the exception to the refusal of the trial court to charge that there was "no indirect testimony" that Kumm, the gateman, "was in complete possession of his faculties of hearing at the time of this accident." The recital of a few additional facts will disclose the bearing of this request. The defendants called as a witness the gateman Kumm. He was so deaf that a speaking tube had to be used for the purpose of making him hear the questions of counsel. He testified that this deafness came upon him all at once on the 10th day of November, 1905, which was a little more than a month after the accident to the plaintiff, and that previous to the 10th day of November, 1905, his hearing had been good. His testimony in this behalf was corroborated by that of his wife, which was to the same effect. Upon this situation thus presented, counsel for the defendants requested the trial court to charge "that the evidence is that the gateman was in complete possession of his faculties of hearing at the time of this accident." To this the trial court assented by saying: "That is his evidence." Counsel for the defendants then said, "Also his wife," to which the court replied, "Surely. All the evidence on that subject is to that effect." Defendants' counsel, not content *Page 277 
with that unequivocal statement, further pressed the matter by suggesting, "There is no evidence to the contrary," and to this the court responded, "No direct evidence." Thus the case stood when the defendants' counsel requested the court to charge that "there is no indirect testimony to the contrary." Thereupon the court replied, "I will not say that. In other words the testimony of the witness Kumm and his wife is for the jury to determine."
We think the exception to this statement and ruling was not well taken. The court had previously charged all that the defendants were fairly entitled to upon that subject. Counsel in their zeal then pursued the subject somewhat hypercritically and they really injected into the case the unnecessary colloquy as to "indirect testimony." Quite apart from this technical view of the matter, however, there was no error or impropriety in leaving it for the jury to decide whether the gateman's sudden and complete deafness within a month after the accident was consistent with his possession of an unimpaired sense of hearing at the time of the accident. Although he was not a party to the action he had testified to a fact which, if material to the issue, was so unusual in the natural course of events as to invite inquiry. The jury had the undoubted right to weigh the testimony of the witnesses in this behalf for the purpose of testing the truthfulness of the rest of the gateman's story. (Elwood v.West. Un. Tel. Co., 45 N.Y. 549.)
There is another exception in the case, however, which presents a much more serious question. That is the exception taken to the ruling under which the court admitted evidence of the income, profit or earnings which the plaintiff had derived from his business during the three years preceding the accident. In the interrogatories of plaintiff's counsel, the plaintiff's revenue from this source was called "earnings," but that is mere nomenclature which cannot be permitted to determine the inquiry whether the plaintiff's income had in fact been of such a character as to make it a proper element of the damages which he claimed the right to recover. As bearing upon that branch *Page 278 
of the case, it appeared that for a number of years prior to the accident the plaintiff had been a "building carpenter contractor." He generally took entire contracts for certain amounts, although sometimes he furnished only the labor, at other times only the material, and again both material and labor. The extent of his business was not disclosed, but it appeared that he had a horse and wagon, and employed men. From these facts the inference was clearly permissible that he must have had invested in his business some capital with which to carry out his contracts. The circumstance that he occasionally did some work with his own hands simply emphasizes the fact that his principal occupation seems to have consisted in figuring on contracts, overseeing the work of his employees, and making such arrangements for materials and labor as the nature of his undertakings required. Upon these meagre facts we are to determine whether the income of the plaintiff for the three years preceding the accident falls within the category of personal earnings, the loss of which it was permissible to prove as an element of the damages suffered by him, or whether it must be classed, either wholly or substantially, as uncertain business profits proceeding from invested capital which may not be considered in the process of ascertaining his loss. The rule of law which governs this phase of actions of this character has long been settled as an abstract legal proposition but, like many other legal rules, it sometimes encounters serious difficulties in the course of its application to particular facts. There are cases in which the facts are so definite and unequivocal as to necessarily relegate them to either one or the other of the two extremes of the rule. Between these extremes we find every degree and variety of fact and circumstance to which the rule must be applied, and occasionally these are so near the shadowy border line as to present troublesome questions. A few citations will serve as illustrations. In Masterton v. Village of Mt. Vernon
(58 N.Y. 391, 396) the plaintiff was permitted to testify to his profits, year by year, in the business of buying and selling teas, in which the plaintiff had attended *Page 279 
to the buying, which required great skill. The business had been extensive and had fallen off considerably after the injury to the plaintiff. There it was held to be error to have received evidence of the past profits of the plaintiff, because they were necessarily uncertain and fluctuating, and in stating that conclusion this court said: "The plaintiff had the right to prove the business in which he was engaged, its extent, and the particular part transacted by him, and, if he could, the compensation usually paid to persons doing such business for others. These are circumstances the jury have a right to consider in fixing the value of his time. But they ought not to be permitted to speculate as to the uncertain profits of commercial ventures, in which the plaintiff, if uninjured, would have been engaged." This excerpt from the opinion in that case clearly discloses the reason of the rule. It is simply an adaptation to a special class of cases of that general rule of damages under which, at common law, the party injured may recover for any loss that is definitely fixed or is capable of ascertainment with reasonable certainty. The later decisions upon the subject were reviewed by this court in the comparatively recent case ofKronold v. City of New York (186 N.Y. 40, 44). There the plaintiff was engaged in selling Swiss embroideries, for which he took orders from sample designs or from drawings. He maintained an office, but its equipment and the expense of keeping it were so insignificant as compared with the amount which he earned as the result of personal canvassing and solicitation that it was held to have been error to have excluded proof of his earnings previous to the personal injury upon which he based his action. In that case some of the earlier decisions were reviewed, and these clearly demonstrate that when a claim for damages arising out of personal injuries is based upon the destruction or impairment of one's ability to perform labor or render service which is essentially and fundamentally personal in character, evidence may be given as to the nature and extent of the loss. This rule has been applied to lawyers, physicians, dentists, teachers, midwives, gaugers, pilots, book *Page 280 
agents and other professional or semi-professional occupations in which the element of personal earnings has been held to predominate over a small and purely incidental investment of capital. (Kronold v. City of New York, supra; Ehrgott v.Mayor, etc., of N.Y., 96 N.Y. 264; Simonin v. N.Y., L.E. W.R.R. Co., 36 Hun, 214; Nash v. Sharpe, 19 Hun, 365;Lynch v. Brooklyn City R.R. Co., 123 N.Y. 657; Waldie v.Brooklyn Heights R.R. Co., 78 App. Div. 557.)
The latest case in which this court has had occasion to apply this rule is that of Weir v. Union Ry. Co. (188 N.Y. 416). That case may be fairly said to be the antithesis of theKronold case, for it furnishes a very pointed illustration of the opposite extreme of the rule. There the plaintiff had rented a small place in which he established an oyster stand and lunch room. The supplies purchased and sold by the plaintiff varied in amount to such an extent that occasional changes had to be made in the number of persons employed as waiters and assistants. Sometimes there were two or three, and at other times only one. The plaintiff's income consisted of the difference between the gross receipts and the running expenses of the establishment, and it fluctuated from week to week. There the trial court received evidence of the plaintiff's weekly profits, and the ruling was approved by the Appellate Division. When the case reached this court, however, the judgment was reversed upon the ground that the evidence was incompetent. That case is strikingly apposite to the discussion here, because it clearly shows that profits are not earnings simply because a business is very small, any more than earnings are necessarily to be considered as profits because they happen to be large. In other words, it is the character of the business or occupation and of the income derived therefrom that must determine the admissibility of such evidence in this class of actions. If the asserted loss consists of profits which are essentially the uncertain and fluctuating increment of invested capital, proof thereof is inadmissible no matter how small it may be; and, conversely, if the loss is due to the *Page 281 
destruction or impairment of one's personal earning capacity the evidence thereof is not to be excluded simply because it may be large.
In the light of these distinctions the case at bar is easily classified. We think the evidence of the plaintiff's income from his business for the three years preceding the accident in which he suffered his injuries was incompetent because it related to profits depending in considerable measure upon capital invested in business, as distinguished from personal earnings. We have said that the evidence upon this subject was somewhat meagre, and so it was. That is, however, either the fault or the misfortune of the plaintiff. If there was in existence any further evidence in addition to that adduced which might have tended to show that the plaintiff's occupation was such as to place his loss of income in the category of personal earnings, it was in the plaintiff's possession and he should have produced it. If there was no such additional evidence he must abide by the usual and necessary inference that a contractor, engaged in the business of constructing buildings, in which he buys material, employs labor, oversees the work, and looks for his returns to the difference between what he gets and what he expends in performing his contracts, is not one who depends upon his personal earnings but upon the profits of his business. In either event the defendants are entitled to a new trial.
The judgment should be reversed and a new trial granted, with costs to abide the event.
CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.
Judgment reversed, etc. *Page 282