MATTHEW WALSH, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

Negligence — railroads — settlement with one of two joint tort feasors — when evidence of such settlement not sufficient to show release of the other tort feasor — damages for personal injuries caused by negligence — evidence — earnings, involving profits, from business may not be proved as elements of damage.

1. One who has been injured by the joint wrong of several parties may recover his damages against either or all; but, although there may be several suits and recoveries, there can be but one satisfaction.

2. Where a release contains no reservation, it operates to discharge all the joint tort feasors; but, where the instrument expressly reserves the right to pursue the others, it is not technically a release, but a covenant not to sue, and they are not discharged.

3. The plaintiff was injured under such circumstances as that he claimed the right to recover therefor from two railroad companies. On the trial of this action brought against one of the companies he testified that he had " settled " the other action, and identified a paper shown him as " the paper of settlement," the introduction of which in evidence was objected to by this defendant, whereupon it was withdrawn. *Held*, that to defeat the plaintiff's claim the defendant was bound to prove that plaintiff had not merely settled with the other company, but that it had been done under circumstances which operated to discharge the defendant. This is not a case for presumption, based upon an unexplained and equivocal use of a word, but for proof of facts upon which the definite assertion of a release of the defendant could be predicated.

4. The usual allegation in the complaint against the joint tort feasor that the injury was due solely to its negligence is competent in this action as an admission, but is open to explanation and is not conclusive.

5. Evidence of profits of business, which are uncertain and fluctuating in character and amount, is not admissible to prove loss sustained by reason of personal injuries, but loss of services which have a certain and definite value may be proved. The first inquiry in each case is whether the loss sought to be recovered consists of profits which may not be proved, or earnings which may be proved.

6. Where the evidence of plaintiff was not clear as to whether the

loss to which he testified fell under one head or the other, but was supplemented by the testimony of a competent witness who stated what plaintiff's earnings as such were worth and the remarks of counsel and charge by the court made it clear that plaintiff's earnings might be included in the verdict but that profits of the business must be excluded, *held*, that there was no reversible error.

*Walsh* v. *N. Y. C. & H. R. R. R. Co.*, 140 App. Div., 1, affirmed.

(Argued December 5, 1911; decided January 9, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 20, 1910, affirming, by a divided court, a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alfred L. Becker* for appellant. The damages allowed were based on incompetent evidence. (*Gombert* v. *L. V. R. Co.*, 195 N. Y. 273.) The plaintiff, by settling with the Erie Railroad Company, a joint tort feasor, released this defendant. (*Gilbert* v. *Finch*, 173 N. Y. 455; *Dahlstrom* v. *Gemunder*, 198 N. Y. 449; *Barrett* v. *T. A. R. R. Co.*, 45 N. Y. 628; *Nassoiy* v. *Tomlinson*, 148 N. Y. 326; *E. V. B. Co.* v. *Prosser*, 157 N. Y. 289; *Komp* v. *Raymond*, 175 N. Y. 102; *Coon* v. *Knapp*, 8 N. Y. 402; *Irvine* v. *Millbank*, 56 N. Y. 635; *Knickerbocker* v. *Colver*, 8 Cow. 111; *Livingston* v. *Bishop*, 1 Johns. 290; *Ruble* v. *Turner*, 2 Hen. & M. 38; *Bronson* v. *Fitzhugh*, 1 Hill, 185.)

*Alfred W. Gray* for respondent. The evidence upon the question of damages was entirely competent. (*Kronold* v. *City of New York*, 186 N. Y. 40.) The defendant was not freed from liability because the plaintiff "settled" his suit against the Erie Railroad Company. (*Gilbert* v. *Finch*, 173 N. Y. 455; *Daniels* v. *Hallenbeck*, 19 Wend. 408; *Ostrom* v. *Green*, 161 N. Y. 353; *Snow* v. *Chandler*, 10 N. H. 92; *Line* v. *Nelson*, 38 N. J. L. 360;

*Ellis* v. *Esson,* 50 Wis. 138; *City of Chicago* v. *Babcock,* 143 Ill. 358; *Mitterwallner* v. *Supreme Lodge,* 109 App. Div. 70; *Komp* v. *Raymond,* 175 N. Y. 102.)

WERNER, J. This is an action to recover damages for personal injuries, and it presents two questions upon which there has thus far been some difference of judicial opinion. The first question is whether the plaintiff should be precluded from maintaining this action because he compromised or settled another suit which he brought against the Erie Railroad Company on account of the same accident. The second question is whether the trial court made erroneous rulings in admitting evidence designed to establish the plaintiff's earning capacity prior to the casualty in which he was injured. All the other questions which have arisen in the case are either conclusively disposed of by the unanimous affirmance, at the Appellate Division, of the judgment entered upon the verdict, or by rulings which, although reviewable in this court, present no errors which in our opinion would justify the reversal of the judgment. A brief statement of the facts will disclose the pertinence of the two questions which survive for our consideration.

On the 30th day of May, 1907, the plaintiff was injured on the tracks of the defendant at Suspension Bridge by a car belonging to the Erie Railroad Company, which was part of an Erie train that was being moved on what was known as the Erie transfer track. There were seven of these tracks, and all were the property of the defendant. By an arrangement between the two corporations, the Erie Railroad Company used the seventh or most southerly track for the transfer of cars. To the north of all these tracks was the station of the defendant, and several hundred feet south of the tracks and running parallel therewith there was a street known as North avenue. From this street, over a rough piece of land belonging to the defendant, there were two well-defined paths which

led to and across the tracks of the defendant and to its station. The physical situation in that neighborhood was such that this path was much more convenient for the local patrons of the defendant's railroad than any of the adjacent streets which afforded passage to and from its station, and the evidence submitted to the jury war- ranted the finding that for more than twenty years these paths had been used daily by hundreds of persons, many of whom were patrons of the defendant, and that this use was acquiesced in if not expressly authorized by the defendant.

On the day of the accident the plaintiff, who was then a resident of Niagara Falls, had been in Buffalo and returned to Niagara Falls on one of the defendant's trains which arrived at some time between ten and eleven o'clock in the evening. He alighted at the Suspension Bridge station, not on the northerly side of the train looking toward the station, but on the southerly side which led to the stretch of seven tracks. These he pro- ceeded to cross toward the easterly one of the two paths above described. This was blocked by an Erie train, the rear car of which was about opposite the path. The plaintiff started to walk around this car, and it was while attempting to do this that the car was suddenly shunted against him and caused the injuries of which he complains.

After the accident the plaintiff brought an action against the Erie Railroad Company, which was later settled by the payment to the plaintiff of the sum of $7,000. Then this action was brought upon a complaint in the usual form, and in the answer thereto the defend- ant alleged that " the plaintiff for a good and valuable consideration equaling or exceeding in value and amount all the damage and injury suffered or alleged to have been suffered by the plaintiff as set forth in the complaint, to him in hand paid by the Erie Railroad Company, released and forever discharged both said Erie Railroad Company

and this defendant of and from all claims," etc., arising out of the personal injuries which are the subject of the action.

At the trial the plaintiff testified, on the direct examination, that he had settled the action against the Erie Railroad Company and had received from it at the time of the settlement the sum of $7,000. He was shown a paper which he admitted having signed and identified it as "the paper of settlement." On the cross-examination of the plaintiff he reiterated what he had testified to concerning the settlement with the Erie Railroad Company, and also admitted that in the action against that company he had sworn to a complaint in which he had alleged "that said occurrence and injury," referring to the same occurrence and injury involved in this action, "were due solely to the carelessness and negligence of the defendant," the Erie Railroad Company. At the close of the plaintiff's case there was a motion for a nonsuit, and at the conclusion of all the evidence a motion for a direction of a verdict against the plaintiff on the ground, *inter alia*, that according to the plaintiff's own evidence he had settled his case against one of the two parties who were charged as joint wrongdoers, and that this settlement was conclusive upon him in the case at bar. These motions were denied, and the exceptions to these rulings present the question: Did the plaintiff's compromise of his cause of action against the Erie Railroad Company operate to discharge the defendant, its joint tort feasor?

It is elementary law that one who has been injured by the joint wrong of several parties may recover his damages against either or all; but although there may be several suits and recoveries, there can be but one satisfaction. (*Livingston* v. *Bishop*, 1 Johns. 290; *Thomas* v. *Rumsey*, 6 Johns. 26; *Barrett* v. *Third Ave. R. R. Co.*, 45 N. Y. 628, 635.) The reason of the rule is that while there may be many perpetrators of a wrongful act, each of

whom is separately liable, yet the act and its consequences are indivisible and the injured person is, therefore, limited to a single satisfaction. The early English cases and some of the later cases in our sister states literally follow the logic of this rule to the conclusion that any kind of a settlement, release or satisfaction, even though expressly limited to certain parties and reserving all rights as against the others, operates to discharge all who participate in the wrong. The idea underlying this rule is that the primary intention to release is the thing to be carried out, and all inconsistent reservations must be ignored as repugnant to the purpose of the release, which was to destroy the debt or obligation. It is one of those harsh although strictly logical common-law rules which has had to make way for the modern tendency to substitute justice for technicality wherever that is possible; for now the English courts are holding that the general words of a release, which are limited by specific reservations, are to be construed as a covenant not to sue the party to whom the instrument is given, thus effectuating the intention of the parties without affecting the joint liability. The authorities bearing upon this modern relaxation of the ancient rule were very succinctly, yet comprehensively, reviewed by Judge HAIGHT in the case of *Gilbert* v. *Finch* (173 N. Y. 455, 466), and the conclusion of this court was thus stated in the closing paragraph of the opinion in that case: "It thus appears that the decisions of this court are in accord with the English rule and in harmony with our statute in reference to joint debtors. (Code Civ. Pro. secs. 1942, 1944.) They give force and effect to the intention of the parties to the instrument, which, we think, is more just and the wiser and safer rule. Where the release contains no reservation it operates to discharge all the joint tort feasors; but where the instrument expressly reserves the right to pursue the others it is not technically a release but a covenant not to sue, and they are not discharged."

As we understand the position of the appellant and of our associates who are opposed to the affirmance of this judgment, it is that the rule announced in *Gilbert* v. *Finch* has no application because the plaintiff proved that he had " settled the action against the Erie Railroad," but did not prove that the " paper of settlement" contained any provision preserving the plaintiff's right of action against the defendant in this action. It is urged that the word " settled," as used in this connection, imports a discharge or release which is the equivalent of a release under seal, and that in the absence of testimony tending to qualify or limit its extent and effect, it must be presumed to mean a settlement by which the defendant is discharged. We think that no such presumption should be based upon a word which has a variety of meanings, and which, as applied to legal proceedings or disputes between men, is defined as an adjustment of differences or accounts, or as coming to an agreement. (Webster's Int. Dict.) It is a term which is loosely and indiscriminately used to describe all sorts of compromises as well as technical discharges and releases. In most cases its accurate meaning and legal effect can only be determined in view of the particular transaction to which it is applied. In the case at bar the plaintiff evidently used it in a colloquial sense to indicate that he had adjusted his differences with the Erie Railroad Company. He was under no obligation to make any proof on the subject of payment by any settlement with the Erie Railroad Company. These were matters of defense which it was the duty of the defendant to plead and prove. The plaintiff's general reference to the subject left the defendant's duty just where the law had placed it. To defeat the plaintiff's claim the defendant was bound to prove that the former had not merely settled with the Erie Railroad Company, but that it had been done under circumstances which operated to discharge the defendant. Under the rule adopted by

this court in *Gilbert* v. *Finch* (*supra*) this was not a case for presumption based upon an unexplained and equivocal use of a word, but for proof of facts upon which the definite assertion of a release of the defendant could be predicated.

Thus far we have proceeded upon the printed record which indicates no effort on the part of the plaintiff to offer in evidence the document which he had identified as being "the paper of settlement." To this we are now permitted to make an addendum which, we think, conclusively disposes of this question. In the course of the oral argument the plaintiff's counsel, when pressed with the suggestion from the bench that his client should be bound by the admission that he had settled with the Erie Railroad Company, replied that he had in court the original stenographer's minutes of the trial, which showed that the so-called "paper of settlement" had been offered in evidence by him and that it was objected to by counsel for the defendant, whereupon it had been withdrawn. Counsel for the defendant who argued this appeal consented that these minutes might be taken by the court as part of the record. These minutes fully sustain the statement of plaintiff's counsel. Thus we have a case in which the plaintiff's offer to prove by documentary evidence the exact terms of the settlement with the Erie Railroad Company was met by the objection of the defendant, which is now in court contending that because there was no definite proof of the terms of the arrangement with the Erie Railroad Company, the plaintiff's unexplained use of the word "settled" raises against him the legal presumption that he released and discharged the defendant. We have tried to make it clear that even without this addition to the record there would be no warrant for the presumption that the plaintiff's use of the word "settled" imported a strict release discharging both the Erie Railroad Company and the defendant. Much less should we indulge in such a presumption in the face of

proof disclosing the plaintiff's effort to place before the court the documentary evidence which would have shown precisely what the transaction was. If in these circumstances there were any ground for presumption, we think it would naturally be that the defendant would not object to evidence which would operate to end the litigation and discharge it from liability. Be that as it may, the defendant should not be permitted to profit by its objection to the very proof which it now insists should have been made and which it could have furnished if it had chosen to do so.

It is further urged that the plaintiff's admission as to the allegation of his complaint in the action against the Erie Railroad Company to the effect that the accident which caused the plaintiff's injuries was due solely to the negligence of the Erie Railroad Company should now preclude a recovery against the defendant. That evidence was, of course, competent as an admission, but it was nothing more, and was not conclusive. It was an admission, moreover, which was open to the explanation that it had no reference to this defendant's connection with the accident, for it was merely the usual allegation in a complaint charging a defendant with negligence and asserting the plaintiff's freedom from contributory negligence. The defendant asked for no instructions to the jury relative to this feature of the trial, and we do not find any exception which presents the question.

The other question which we are called upon to consider is whether the trial court erred in receiving, over defendant's objections, evidence tending to show the plaintiff's earning capacity prior to the accident. Upon this branch of the case the record is peculiar. On his direct examination the plaintiff testified that he was in the business of selling men's furnishings in a store conducted by himself without the aid of clerks. He was asked what his services were worth in that business and he answered, "between $150 and $200 a month." He stated in detail

his duties as a salesman, and his counsel expressly disclaimed that he was asking for the profits or returns on invested capital, and insisted that he was asking only for the value of his services. Thus the record stood when the plaintiff was cross-examined. In answer to questions put to him by defendant's counsel he reiterated that he had been earning $150, and then he added: "I took out $150 a month. That included the profit on my goods. That included what I was making in the business." Then he was asked: "And that is why you were worth $150.00?" and his answer was: "No, sir. I did the buying myself and stayed there myself all the time. And it was because I was making that, that I reckoned my services worth $150.00." At this point the defendant's counsel asked that the testimony on that branch of the case be stricken out and that he be permitted to further examine the witness. Having been granted this privilege, the following question was then propounded to the plaintiff: "Mr. Walsh, you say you took out $150.00 a month, and that is why you say your services were worth that much. Now will you state fully what your capital was there, and what your earnings were?" This was objected to. The court stated that he might answer under objection. Before the witness could answer he was asked the further question: "Was $150.00 a month the entire amount of the profit you made there or not?" This was also objected to "as not the proper method of proving the value of the man's services." The objection was overruled, the defendant's counsel excepted, and the plaintiff answered, "No, sir." He was then asked the further question: "In figuring your services worth $150.00 per month, do you include in that your profits on the capital invested?" Defendant's counsel interposed the same objection which was overruled and followed by an exception. Then the witness answered, "No, sir." The difficulty with this chapter of the trial is not that there is any uncertainty or ambiguity as to the legal rule under which evidence upon this subject is

either admissible or inadmissible, but that neither of the respective counsel presented the matter so sharply as to render it clear which of these two alternatives should have been invoked by the trial court. The rule is that evidence of profits of business, which are uncertain and fluctuating in character and amount, is not admissible to prove loss sustained by reason of personal injuries, but that loss of services which have a certain and definite value may be proved. Therefore, the first inquiry in each case is whether the loss sought to be recovered consists of profits which may not be proved, or earnings which may be proved. That is a question which depends upon the evidence in each instance, as is illustrated in *Kronold* v. *City of New York* (186 N. Y. 40), where we held that a man engaged in the business of selling Swiss embroideries with a small amount of invested capital which was merely an incident or vehicle to the performance of services which were practically personal in their nature, could recover for loss of earnings; and in the cases of *Weir* v. *Union Ry. Co.* (188 N. Y. 416) and *Gombert* v. *N. Y. C. & H. R. R. R. Co.* (195 N. Y. 273) where the converse of the rule was applied because it appeared that the losses sought to be recovered were the uncertain and fluctuating increment of capital invested, although in each of the two latter cases the business was comparatively small. A man is not precluded from recovering for loss of earnings simply because he is in business, but he must not be permitted to prove profits under the guise of earnings. This point is clearly illustrated in *Masterton* v. *Village of Mount Vernon* (58 N. Y. 391) where the plaintiff, a dealer in teas, which was a business requiring expert knowledge and skill, was permitted to prove his profits from year to year. There the rule was thus stated: " The plaintiff had the right to prove the business in which he was engaged, its extent, and the particular part transacted by him, and, if he could, the compensation usually paid to persons doing

such business for others.  These are circumstances the jury have a right to consider in fixing the value of his time.   But they ought not to be permitted to speculate as to the uncertain profits of commercial ventures, in which the plaintiff, if uninjured, would have been engaged." (p. 396.)

It is conceded that in the case at bar the plaintiff's own evidence is not so clear as it might have been had his counsel hewn more closely to the line which separates earnings from profits.   His own testimony upon this subject is far from satisfactory.   It is so equivocal that it is difficult, if not impossible, to decide whether the loss to which he testified falls under one head or the other. And it may be added that the cross-examination did not dissipate this uncertainty.   There are two answers, however, to the criticism which may be made upon this part of the evidence:  1. It was supplemented by the testimony of a competent witness, who stated very clearly what the plaintiff's earnings as earnings were worth. 2. Among the last words in the judge's charge to the jury we find this instruction: "And if you come to the question of damages, you are not to take into consideration the profits of his retail store business."   Although this last question is not free from doubt, we are of the opinion that the defendant was not prejudiced by the rulings.   The remarks of counsel during the taking of evidence on this subject, and the closing admonition of the trial judge, must have made it unmistakably clear to the jury that the value of plaintiff's earnings might be included in any verdict which they should find in his favor, but that profits of his business must be excluded.

The judgment should, therefore, be affirmed, with costs.

CULLEN, Ch. J. (dissenting).   I dissent from the decision about to be made.   It was unnecessary in this case to show that a release or any written instrument had

been delivered to the Erie Railroad Company. It was sufficient to show by parol a satisfaction by that company. This could be just as well effected by an oral agreement and receipt of consideration as by any written instrument. The plaintiff testified: "I brought an action against the Erie Railroad first. I settled the action against the Erie. I received at the time I made that settlement $7,000. * * * I brought a suit against the Erie for this accident, and I say I settled with the Erie, yes, sir. * * * When I settled with them at that time I did not understand it just as I alleged in the complaint, yet I settled with them." There is not a word of further testimony to limit the effect of this bald statement, and the question is, what does it, on its face and unqualified by other evidence, import? I think it imports a satisfaction of the claim. It is true that the plaintiff might have received money from the Erie Company upon an agreement that would not operate to discharge the defendant in this action, but if that was the case it was incumbent on the plaintiff to show that such was the agreement. If the testimony or admission of a party was that he had been paid the claim in suit, it would import that he had been paid the whole claim and in a manner that would operate to discharge it. If the claim had been paid only in part or by a note, the failure to pay which revived the original claim, the claimant would be bound to state the fact. The proposition, however, seems to be settled in this state by authority. In *Barrett* v. *Third Ave. R. R. Co.* (45 N. Y. 628) the question was similar to that which has arisen in this case. On the submission of the case to the jury the court was requested to charge that "if they (the jury) believed that there had been a settlement with the Harlem Railroad Company for the injury claimed in this action, no matter how slight the consideration, this action could not be maintained." This court said: "The request was proper in terms, and should have been complied with, if

there was any evidence of such settlement." (p. 636.) In *Dahlstrom* v. *Gemunder* (198 N. Y. 449, 455), which was also the case of an alleged satisfaction by one of two joint tort feasors, Judge Hiscock, writing for the court, said: "'Plaintiff further admits that the action so brought against the said Hay was settled and compromised for the sum of $1,750.' * * * If the claim has been settled, that is satisfied, there is nothing to be reserved as a basis for prosecution of another liable for the same claim," citing cases. That "settlement" imports satisfaction is evidenced by the use of the word in judicial opinions rendered in scores of cases in this and other states. In *Nassoiy* v. *Tomlinson* (148 N. Y. 326, 331) Judge Vann said: "We think that the undisputed evidence shows conclusively that the offer was made in settlement of the claim and that the plaintiff so understood it, when, by using the check he accepted the offer." In *Gilbert* v. *Finch* (173 N. Y. 455), upon which reliance is placed in the opinion of my brother Werner, the claim was for a certain sum and the instrument itself reserved the right. This fact is emphasized in the opinion there rendered by Judge Haight and it also appeared in many of the cases cited by him in this and other states. (*Irvine* v. *Millbank*, 56 N. Y. 635; *McCrillis* v. *Hawes*, 38 Me. 566; *Ellis* v. *Esson*, 50 Wis. 138; *Sloan* v. *Herrick*, 49 Vt. 327. See, also, *Ellis* v. *Bitzer*, 2 Ohio, 89.) In the present case the damages were unliquidated and $5 would have amounted to a satisfaction as well as $5,000.

The real ground on which the case is to be affirmed, however, seems to be because it appears in the stenographer's minutes, though not in the printed record, that the "paper" of settlement when offered in evidence by the plaintiff was objected to by counsel for the defendant and thereupon withdrawn. The instrument is not produced before us, and we are entirely ignorant of its contents, yet we are to speculate that the contents of the instrument would have been unfavorable to the defend-

ant and have shown that the agreement was of a character that would not discharge the defendant. In my judgment such speculation is entirely unwarranted. It would never be tolerated in the action of a jury, and much less should it be indulged in by a court of law. What was the ground of the objection to the instrument we do not know. We do know, however, that after the objection was made by the defendant the plaintiff voluntarily withdrew it. What is the presumption from this conduct — that the instrument was competent evidence and the defendant wrongfully kept it out or that the plaintiff in withdrawing the offer conceded that the objection was well founded? Plainly the latter. If so, on what theory can we indulge any presumptions against the defendant for its refusal to admit incompetent evidence?

I also think the evidence offered to prove the value of the plaintiff's services was incompetent and in violation of the rule we have laid down in the cases cited by my brother WERNER. What the plaintiff should have been permitted to prove and only what he should have been allowed to prove was the fair and reasonable salary of a man employed to do his work. This was the rule declared in *Masterton* v. *Village of Mount Vernon* (58 N. Y. 391.) It is reiterated in *Weir* v. *Union Ry. Co.* (188 id. 416) and *Gombert* v. *N. Y. C. & H. R. R. R. Co.* (195 id. 273), to wit: "The compensation usually paid to persons doing such business for others." Taking the view of the case most favorable to the respondent, what he was allowed to do was to fix most arbitrarily what part of his income he thought due to his services. Such a rule would open the door to evidence which in the cases referred to has been condemned. A banker in the receipt of a very large income from his business might think, and not wholly without reason, that, after allowing interest on his capital at a very liberal rate, the remainder of his income was due to his exceptional ability. This is a very differ-

ent thing from "the compensation usually paid to persons doing such business for others." True, the business before us is a comparatively small affair, but the principle involved is the same in the two cases.

VANN, WILLARD BARTLETT and CHASE, JJ., concur with WERNER, J.; GRAY and HAIGHT, JJ., concur with CULLEN, Ch. J.

Judgment affirmed.