FRANK P. SHELDON ET AL., APPELLANTS, v. C. J. BILLS ET AL., APPELLEES.

FILED JANUARY 5, 1918. No. 19621.

1. **Appeal: DISMISSAL.** This court obtains jurisdiction upon appeal by the filing of the transcript duly certified. The appeal will not be dismissed for irregularities in the præcipe, if first brought to the attention of the court upon the final submission of the case, and there is no showing of prejudice.

2. **Corporations: MISAPPLICATION OF ASSETS: LIABILITY.** If the directors of a joint stock insurance company withdraw a large sum of money from the assets of the company and use it for a purpose beyond their powers as directors, they will be personally liable for the loss that the company actually suffers thereby. Their honest belief at the time that such action will result in benefit to the company will not relieve them from liability.

3. ——: ——: ——. If one of the directors of the company was absent from the state, and had no notice of the unlawful action of the directors, he will not be bound by such action, nor estopped to complain of the same.

4. ——: ——: RATIFICATION. The action of the stockholders in winding up the affairs of the company, after they had discovered this action of the defendants and the condition of the company, will not amount to a ratification of the former unauthorized action of the directors.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Reversed, with directions.*

*C. A. Rawls,* for appellants.

*T. J. Doyle, contra.*

Sedgwick, J.

In May, 1910, the Woodmen Fire Insurance Company was organized, under our statutes, as a joint stock company, having 1,000 shares of stock of the par value of $100 each. Each shareholder paid in $125 a share, giving the company a paid-up capital stock of $100,000 and a surplus of $25,000. The six defendants were duly elected directors of the corporation. In June, 1911, the defendants, as directors of the Woodmen Fire Insurance Company, attempted to purchase the Union Fire Insurance Company, Mutual, and paid to the directors of that company $26,000 as the purchase price. It was agreed between the directors of the two companies that the directors of the Union Fire Insurance Company, Mutual, should resign and the directors of the Woodmen Fire Insurance Company should be elected in their places, which was accordingly done. A stockholder of the Union Fire Insurance Company objected to this transaction and prevented it by injunction. Thereupon the $26,000 was returned by the Union Fire Insurance Company. On the 8th day of January, 1912, the defendants, as directors of the Woodmen Fire Insurance Company, entered into a contract with the Fidelity Phœnix Insurance Company of New York, by which they agreed to turn over the business of their company to the New York Company, and agreed that the Woodmen Fire Insurance Company should solicit no more loans and do no further business for a period of five years. They instructed the agents of their company to transact no further business, and the Woodmen Fire Insurance Company ceased to exist as a going concern. At the annual meeting of the stockholders of the Woodmen Fire Insurance Company on the 20th day of January, 1912, this contract with the Fidelity Phœnix Insurance

Company was submitted to the stockholders of the Woodmen Fire Insurance Company, and was ratified by the stockholders. At that meeting the stockholders voted to liquidate and wind up the affairs of the Woodmen Fire Insurance Company, and appointed a committee of five stockholders of that company to make investigations and report at an adjourned meeting of the stockholders to be held in February, 1912. At the meeting in February, 1912, the committee was continued and instructed to ascertain the assets of the Woodmen Fire Insurance Company and to obtain propositions for the purchase of the assets and report at a meeting to be held in March. At the adjourned meeting held in March, the defendants, as directors, were authorized by the stockholders to sell the assets of the company and pay to each stockholder his *pro rata* share of the proceeds. Thereupon the committee sold the real estate mortgages held by the company, of the face value of $75,800, to one of these defendants, and converted other assets into money, and distributed the proceeds of these assets, amounting to $398,303.94, among the stockholders of the company, each director of the company receiving $80 a share, and the other stockholders $95 a share. Afterwards the remaining assets were converted into cash and the proceeds distributed *pro rata*. Afterwards these plaintiffs brought this action in the district court for Lancaster county against these defendants, as directors of the company, alleging that the action of the defendants, as directors, was unauthorized and fraudulent, and that these plaintiffs, as stockholders, had been damaged thereby in the sum of $26.175 on each share of stock owned by them. The plaintiff, Andrew F. Sturm, was the owner of 40 shares, and the plaintiffs, Frank P. Sheldon and George L. Sheldon, were each the owner of 50 shares of the capital stock of the company, which shares, it was alleged, were worth $125 each, and because of the unlawful acts of the defendants these

shares were depreciated in value and the' plaintiffs only received $98.825 a share. The trial court found the issues in favor of the defendants and dismissed the action. The plaintiffs have appealed.

The first question presented is as to the form of the action. It is contended that the corporation is a necessary party to this action, and that these plaintiffs, as stockholders, cannot maintain the action. The plaintiffs· alleged in their petition that they brought this ' action in their own behalf and for all others similarly situated that might become parties to the action. The court tried the case as an action in equity and without the intervention of a jury, but made no special findings of fact. In the præcipe for appeal the parties are designated as Frank P. Sheldon et al. v. C. J. Bills et al., and the præcipe designates "the above-named plaintiffs as appellants, and the. above named defendants as appellees." This, of course, is irregular. Rule 18, Supreme Court Rules (94 Neb. XV), requires that the præcipe shall state "the names of all parties and their relations to the case as they appeared in the court below. The præcipe shall also specify the party or parties appealing, and designate all others made parties to the appeal as appellees." There was no motion to dismiss the appeal, but the appellees in their brief object that the defendant Woodmen Fire Insurance Company is not made a party to the appeal, and asks that the appeal be now dismissed for that reason. The petition contained in the transcript contains the names of all of the. defendants, and all of the defendants, including the Woodmen Fire Insurance Company, joined in the answer. It is not made to appear that these defendants were not duly notified of the appeal, and the objection now made to the appeal is too late.

It is next contended by the plaintiffs that the action of the defendants in their attempted purchase of the Union Fire Insurance Company was beyond their

powers as directors, and that the withdrawal of this $26,000 from the assets of the company ruined the business of the company, which was, before that, in a prosperous condition, and was a direct damage to all the stockholders of the company. The question so presented is quite similar to the question decided in *Gilbert v. Finch,* 173 N. Y. 455, 93 Am. St. Rep. 623. In that case it appears, as stated in the opinion, that "$35,000 were taken from the treasury of the Commercial Alliance Company and paid over to the incorporators of the Maine & New Brunswick Company," and the court said that this act was "*ultra vires* and constituted a waste of the funds of the Commercial Alliance Company, and that the defendants, who authorized such appropriation of the moneys, became liable to respond to the plaintiff in damages." And the law of the case was summarized by the authorities as follows:

"Directors of an insurance company, who use its funds to purchase the interest of the incorporators of another company, the latter having no interest that the purchasing company could buy, and the thing accomplished being the resignation of the officers of the second company and the substitution of the directors of the first, are joint tort-feasors, and liable for wasting the corporate funds." (93 Am. St. Rep. 623) The remarks of the court in that case as to the conduct of the defendants in entering into the contract are, we think, especially applicable in this case, and we quote them, as follows:

"It is not our purpose to question the character or the motive of the defendants in carrying out the transaction. We may readily concede that they thought they were acting for the best interests of the company which they represented. They doubtless thought that by getting control of the Maine company and getting themselves installed as officers they could get the policyholders in that company to transfer their in-

102 Neb.—7

surance into the Commercial Alliance Company; but good motives and good intentions do not render the transaction valid or relieve them from liability for the wrong which they have committed.''

The analogy between the two cases is apparent from the following language of the opinion:

''The Maine incorporation was not a stock company. Its officers had no stock in the company which they could sell or transfer, and consequently there was nothing that the Commercial Alliance Company could purchase. The thing accomplished by the transaction was the resignation of the officers of the Maine company and the substitution of the defendants or their representatives.''

The greater part of the $26,000 so taken by these defendants from the assets of the company was returned within about eight months thereafter. The evidence shows that this transaction directly cost the company attorney fees and other items of expense. There is also evidence tending to show that the company received from the Union Fire Insurance Company some money in the settlement with that company, and also was put to some additional expense on account of their attempt to handle some of the business of the company. These defendants would be liable in this case for such part of the $26,000 as was lost to the company and such sums as the company expended in the transaction, and in adjusting their affairs with the Union Fire Insurance Company. Against these should be offset such sums of money, if any, as were received by this company from the Union Fire Insurance Company, or on account of their transaction with that company. The plaintiff George L. Sheldon was one of the seven directors of the company, but he was absent from the state during the transactions complained of, and did not participate in, or have any knowledge of, those transactions, so that the fact that he was one of the directors has no bearing upon the

mistake of these defendants, unless it is regarded as an aggravation of their conduct in acting without the unanimous voice of the board of directors. The action of the stockholders in winding up the affairs of the company, after they had discovered this action of the defendants and the condition of the company, although consented to by these plaintiffs, must not be considered as ratifying the former unauthorized action of these defendants. In this action the plaintiffs could recover only such damages as are definitely proved by a preponderance of the evidence. It is not clear from the evidence now before us that the company was in a prosperous condition when the attempt was made to purchase the Union Fire Insurance Company, nor that the attempted purchase of the Union Fire Insurance Company, caused the failure of this company. The plaintiffs may be able on another trial to introduce more definite evidence upon these matters, but it is clear that the unauthorized action of the defendants exhausted some of the assets of the company, and if it was already apparent, as the defendants contend, that the company could not continue in business as it was situated prior to this attempted purchase, this depletion of the assets of the company was a direct injury to the stockholders, and to that extent, at least, the plaintiffs should have recovered.

The judgment of the district court is reversed and the cause remanded, with instructions to allow the parties, if so advised, to amend their pleadings and furnish additional evidence.

REVERSED.

LETTON, ROSE and DEAN, JJ., not sitting.